UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
COLIN J. ADDY,

                        Plaintiff,

vs.

                                                         Civ. No: 06cv13609

HIRERIGHT, INC.

                                                    **COMPLAINT**

                                               **Jury Trial Demanded**

                      Defendant.
-------------------------------------------------------- x

Plaintiff, COLIN J. ADDY, by his attorney, the Richard Weiss, Esq., as and for his Complaint against the defendant, alleges as follows:

**PRELIMINARY STATEMENT**

1.      Colin J. Addy ("CJA"), a New York, New York resident over the age of 18 years, brings this action against defendant HireRight, a consumer reporting agency. This action alleges that HireRight, Inc. ("HireRight") violated both the Federal and New York Fair Credit Reporting Acts, and the New York Consumer Protection Act, by illegally and improperly collecting and reporting certain non-criminal conviction information about CJA in the context of an employment-related consumer report it prepared for Ramius Capital Group, LLC ("Ramius") located at 666 Third Avenue New York, N.Y. This action further alleges that as a direct result of receiving the HireRight's deceptive and misleading consumer report, Ramius fired CJA from the job for he had been hired based on its false perception that he had a criminal record. HireRight thus violated CJA's rights under the federal and New York Fair Credit Reporting Acts and the New York Human

Rights Law. CJA seeks injunctive relief, actual and punitive damages, and an award of attorneys' fees and costs.

## I. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 15 USC § 681(p) and 28 U.S.C. § 1331 because CJA brings claims pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, a federal law. This Court also has jurisdiction pursuant to 15 U.S.C. § 1332, because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. In addition, this Court has supplemental jurisdiction over CJA's state law claims pursuant to 28 U.S.C. § 1367(a).

3. This Court has authority pursuant to 15 U.S.C. § 1681(p), and pursuant to N.Y. Gen.Bus. Law § 349 and N.Y. Exec. Law § 297(9), to grant the monetary, injunctive and other relief CJA seeks in this action.

4. Venue is proper in this Court, and in this District, pursuant to 28 U.S.C. § 1391(b) and 1391(c) because defendant is licensed to do business in this State, and because a substantial portion of the actions complained of occurred or had an effect in this State. In addition, CJA resides in this District.

## II. PARTIES

5. CJA is over the age of 18 years and resides at 1619 Third Ave., apt. 2K, New York, New York. CJA is currently a full time student.

6. HireRight, Inc. is upon information and belief, a California corporation with its corporate headquarters located at 2100 Main Street Irvine, California.

7. Upon information and belief, HireRight is licensed to do business in New York State.

8.	HireRight is in the business of providing a complete job applicant tracking system that allows employers to verify identities, submit background screening requests retrieve results and manage and track applicant data and other goods and services, according to its website, www.HireRight.com.  HireRight creates and disseminates consumer reports, including those used by employers to investigate prospective or current employees.  They conduct business throughout the United States and internationally.

### III.	APPLICABLE LAWS

9.	 The New York Fair Credit Reporting Act ("NY FCRA"),  N.Y. Gen. Bus. Law §380-a *et seq*., governs the content, issuance and use of consumer reports prepared for a variety of purposes, including employment purposes.

10.	The NY FCRA establishes certain requirements for "persons," including corporations, who prepare or use "consumer reports," which are defined in pertinent part as any communication by a consumer reporting agency of information that bears on an individual consumer's credit worthiness, "character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ."  N.Y.  Gen. Bus. Law §§ 380-a(a) and 380-a(c)(1).

11.	The NY FCRA defines "consumer reporting agency" as "any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports . . . to third parties."  N.Y. Gen. Bus. Law § 380-a(e).

12. The defendant is a legal person and constitutes a consumer reporting agency, subject to the requirements of the NY FCRA.

13. The NY FCRA defines a "user" of consumer reports as "any person receiving or requesting a consumer report . . . other than the subject thereof."

14. HIRERIGHT is a person and a user of consumer reports, subject to the requirements of the NY FCRA.

15. The NY FCRA prohibits any consumer reporting agency, including HireRight, from maintaining in its files or reporting any information "relative to an arrest or a criminal charge, unless there has been a criminal conviction for such offense, or unless such charges are still pending." N.Y. Gen. Bus. Law § 380-j(a)(1).

16. The NY FCRA also mandates that "no consumer reporting agency shall report or maintain in the file on a consumer, information . . . which it has reason to know is inaccurate." N.Y. Gen. Bus. Law §380-j(a)(3).

17. The NY FCRA further mandates that "consumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." N.Y. Gen. Bus. Law § 380-j(e).

18. The NY FCRA requires that consumer reporting agencies which "compile and report" information from public records "shall notify a consumer of the fact that public record information is being reported by the consumer reporting agency" or "maintain reasonable procedures designed to insure that whenever public record information is being reported it is complete and up to date to the extent practicable." N.Y. Gen. Bus. Law §§ 380-g(a) and (b).

19.     New York law defines only a misdemeanor or a felony as a "crime."  N.Y. Penal Law § 10(6).

20.     A "violation" (defined as an "offense," N.Y. Penal Law § 10(3)) is not a crime under New York law.

21.     New York Criminal Procedure Law § 160.55 provides for the sealing of non-criminal offenses, including violations.

22.     The Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., governs the content, issuance and use of consumer reports prepared for a variety of purposes, including employment purposes.

23.     The FCRA's defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).

24.     The FCRA defines "consumer report," in pertinent part, as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ."  15 U.S.C. §1681a(d).

25.      The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ."  15 U.S.C. § 1681a (f).

26.     The defendant is a legal person and constitutes a consumer reporting agency subject to the requirements of the FCRA.

27.     HireRight is a person and a user of consumer reports for employment purposes, and is subject to the requirements of the FCRA.

28.     The FCRA mandates that consumer reporting agencies which furnish consumer reports for employment purposes follow reasonable procedures to assure maximum possible accuracy of the information contained therein. 15 U.S.C. § 1681e.

29.     The FCRA further requires that a consumer reporting agency provide the affected consumer with notice that it is reporting public record information that is likely to have an adverse effect upon his ability to obtain employment, and the address of the person to receive the report or, in the alternative, that it use strict procedures to ensure that the public record information it reports is complete and up to date.   15 U.S.C. §1681k (a)(1) and 1681k(a)(2).

30.     The FCRA also requires that an employer provide the consumer with a copy of the consumer report at issue prior to denying the consumer employment based in whole or in part on said report. 15 U.S.C. § 1681b (b)(3).

31.     The New York Consumer Protection Act (the "CPA"), N.Y.  Gen. Bus. Law § 349, was enacted to protect consumers from deceptive acts and practices, and declares that "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in [New York] state" are illegal.  N.Y.  Gen. Bus. Law § 349(a).

32.     The CPA permits "any person who has been injured by reason of any violation [of the CPA]" to bring an action to enjoin the act or practice at issue, and to recover damages

and attorneys' fees.  N.Y.  Gen. Bus. Law § 349(h).

33. The New York Human Rights Law (the "HRL"), N.Y.  Exec. Law § 290 *et seq*., declares certain discriminatory practices to be illegal.  It provides, in part, that "[i]t shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association . . . to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses . . . ."  N.Y. Exec. Law § 296(15).

## FACTS

34. In or about September, 2004, CJA filled out a job application form and was interviewed by the Ramius human resources personnel for a position.

35. Upon information and belief, amongst other things, the job application inquired whether the job applicant (CJA) had ever been convicted of any crime which was not expunged or sealed by a court.

36. On four occasions in years past, CJA had been convicted of "disorderly conduct," a non-criminal offense, and records of those proceedings had been sealed.  CJA, therefore, truthfully answered "no" to this question.

37. At the time he filled out the job application, CJA also signed a form consenting to Ramius' procuring a consumer report and/or an investigative consumer report (the "consumer report" or "report") from defendant HireRight, a consumer reporting agency.

38. Upon information and belief, the consent form stated that HireRight would "conduct a background investigation, consistent with applicable federal and state laws, which may include obtaining conviction history," among other data.

39.     Upon information and belief, the consent form further stated that, if denied employment based in whole or in part on the information contained in the consumer report, CJA would be "provided a copy of the report and a description in writing of [his] rights under the Fair Credit Reporting Act."

40.     Upon information and belief, the consent form also stated that if he were to disagree with anything on the consumer report after having received it, CJA was to notify Ramius within five business days of receiving the report and that, if he did so, Ramius would not "make a final decision on [his] employment status until after he [had] had a reasonable opportunity to address the information contained in the report."

41.     Upon information and belief, HireRight gathered data concerning CJA, including New York State criminal record information. Upon information and belief, this information was obtained through contact with the New York State Office of Court Administration. Upon information and belief, HireRight then created a consumer report concerning CJA that it or they then furnished to Ramius.

42.     In a conversation in or about February 1, 2005, the Ramius head of Human Resources and his immediate boss requested that CJA accompany them into a conference room and told CJA that the company could no longer employ him because his HireRight created consumer report revealed a misdemeanor "disorderly conduct" conviction history.

43.     CJA requested that Ramius give him a chance to clear up the misunderstanding and that Ramius reconsider his termination.

44.     Ramius advised CJA that he had no right to challenge the information contained within the HIRERIGHT report and that his termination was final.

45.     Ramius advised CJA that he had lied on his job application.

46. HireRight did not at any time, including any time prior to providing Ramius with its report provide CJA with any indication that they were reporting potentially adverse public record information to Ramius nor provide him with the name and address of the personnel at Ramius who would receive it.

47. Because of HireRight's and Ramius' actions and omissions as described herein CJA had no opportunity to challenge Ramius assertions about his supposed criminal record.

48. In or about September, 2006, CJA obtained a copy of his official New York State criminal conviction record. The record revealed four non-criminal "disorderly conduct" dispositions, but no criminal convictions.

49. CJA placed a phone call to Ramius in or about February 2, 2004 asking Ramius to reconsider his application based on the fact that he had not been convicted of any crimes, and asking Ramius – again – to send him a copy of the HireRight's-generated consumer report.

50. In a return e-mail dated February 3, 2005, Ramius stated that it was "in receipt of [CJA's] request for [Ramius] to send him a copy of the HireRight-generated consumer report.

51. A link to a copy of the consumer report Ramius had received from the HireRight was sent to CJA via email from HireRight dated February 3, 2005 at the request of Ramius. This was the first time that Ramius and HireRight had shared this document with him. HireRight listed CJA's four non-criminal "Disorderly Conduct" violations on the consumer report. The consumer report set forth each of these non-criminal dispositions.

52. The report did not indicate that a "violation" was not a crime, and did not

indicate that the disorderly conduct charges had been sealed pursuant to New York State Criminal Procedure Law § 160.55.

53.     HireRight's report inaccurately indicated that CJA had a record of criminal convictions, and misled Ramius into concluding that he had lied on his employment application and that CJA could not challenge such finding.

54.     Section 380-j(a)(1) of the NY FCRA, by prohibiting any consumer reporting agency from compiling, maintaining in its file, or reporting for employment purposes any information about any consumer's conviction that is not a "criminal conviction," prohibits consumer reporting agencies, including HireRight, from compiling, maintaining in their files on a consumer, or reporting any information about any consumer's conviction of a violation or other non-criminal offense.

55.     HireRight knew or should have known that section 380-j(a)(1) of the NY FCRA prohibited (and prohibits) them from compiling, maintaining in their files on any consumer, or reporting to any user for employment purposes any information about any consumer's convictions that were not "criminal convictions" within the meaning of that law, and that it was therefore unlawful for HireRight to compile, maintain or report any consumer's non-criminal conviction to users of their consumer reports, including Ramius.

56.     Section 380-k of the NY FCRA required (and requires) a consumer reporting agency to "maintain reasonable procedures designed to avoid violations of [section 380-b] of the law."

57.     The procedures that HireRight used for obtaining, compiling, maintaining in their files, and reporting criminal record information about consumers were likely to cause, and did cause, HireRight to maintain and report non-criminal conviction information

which they were prohibited by law from maintaining or reporting to users, including Ramius, to whom HireRight furnished a consumer report for employment purposes. This information included violations sealed pursuant to New York law.

58. HireRight knew or should have known that the procedures they used in obtaining, compiling, maintaining in its files, and reporting criminal record information were not reasonably designed to be, and did not constitute the "reasonable procedures designed to avoid violation of [section 380-j]" of the NY FCRA as mandated by N.Y. Gen. Bus. Law § 380-k.

59. The FCRA prohibits consumer reporting agencies from making any consumer report prepared or used for employment purposes which "contain[s] any . . . adverse item of information" concerning a consumer's criminal record history "other than records of convictions of crimes . . ." 15 U.S.C. § 1681c(a)(5).

60. Information about convictions that are not "crimes," including convictions of non-criminal offenses such as violations that are sealed pursuant to New York law, are "adverse item[s] of information" within the meaning of 15 U.S.C. § 1681c(a)(5).

61. Public record information about non-criminal convictions is also information "likely to have an adverse effect upon a consumer's ability to obtain employment" within the meaning of 15 U.S.C. § 1681k (a).

62. HireRight knew or should have known that the FCRA prohibited them from making any consumer report prepared or used for employment purposes which "contain[s] any . . . adverse item of information" concerning a consumer's criminal record "other than records of convictions of crimes . . ." 15 U.S.C. § 1681c(a)(5).

63. HireRight knew or should have known that non-criminal conviction information

about a consumer constitutes information "likely to have an adverse effect upon a consumer's ability to obtain employment" within the meaning of 15 U.S.C. § 1681k (a).

64. HireRight knew or should have known that the FCRA required (and requires) them "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever they prepared (and prepare) a consumer report and furnished (and furnish) it to a user for employment purposes.

65. HireRight knew or should have known that the procedures they used in compiling, preparing and making consumer reports were likely to, and did, result in the HireRight's furnishing adverse items of information about individuals' non-criminal convictions which were inaccurate and misleading and were likely to, and did, have an adverse effect upon individuals' ability to obtain employment.

66. HireRight knew or should have known that the procedures they used in compiling, preparing and making consumer reports were not – as they were required to be by section 1681e of the FCRA – "reasonable procedures" designed to avoid violating FCRA's prohibition against a consumer reporting agency making any consumer report containing adverse items of information about individuals' non-criminal convictions.

67. HireRight knew or should have known that their procedures did not assure maximum possible accuracy of the information they reported, and did not take steps necessary to avoid furnishing inaccurate and misleading information to persons using their consumer reports for employment purposes.

68. The FCRA defines "adverse action" in pertinent part as "a denial of employment or any other decision for employment purposes that adversely affects any current or

prospective employee." 15 U.S.C. § 1681a (k).

69.     Prior to taking "any adverse action based in whole or in part on the [consumer] report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report." 15 U.S.C. § 1681b (b) (3).

70.     After receiving HireRight's misleading and inaccurate consumer report, Ramius fired CJA.

71.     CJA suffered direct and proximate emotional and financial harm as a result of defendant's conduct.  This harm included but was not limited to extreme mental anguish and emotional distress, humiliation, and damage to CJA's reputation as a person without a criminal record, and monetary loss including, but not limited to, a sum equal to the difference between the wages, benefits and perquisites CJA would have earned with Ramius ("total Ramius compensation") and the wages, benefits and perquisites he earned after Ramius fired him.

## COUNT I – Violation of New York State Fair Credit Reporting Act
### (against HireRight)

72.     CJA repeats, reiterates and realleges each paragraph designated 1-71 as if fully set forth herein and at length.

73.     HireRight violated the New York State Fair Credit Reporting Act, N.Y.  General Business Law § 380-j (a) (1), by maintaining CJA's non-criminal conviction information, and by setting this information forth in the consumer report it furnished to Ramius.

74.     As a result of HireRight's conduct and actions, CJA was denied employment by Ramius, and suffered damages as set forth at paragraph 71 supra.

75.     HireRight's conduct and actions were willful, rendering HireRight liable for actual

damages, and punitive damages in an amount to be determined by this Court pursuant to N.Y. Gen. Bus. Law § 380-l.

76.     Alternatively, HireRight's conduct and actions were negligent, rendering HireRight liable for actual damages pursuant to N.Y. Gen. Bus. Law § 380-m.

77.     CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either N.Y. Gen. Bus. Law § 380-l or § 380-m.

78.     This Court has the equitable power to enjoin HireRight from engaging in conduct that violates the New York State Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

## COUNT II – Violation of New York State Fair Credit Reporting Act
### (against HireRight)

79.     CJA repeats, reiterates and realleges each paragraph designated 1-78 as if fully set forth herein and at length.

80.     HireRight violated the New York State Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-j (a) (3), by maintaining and reporting information regarding CJA that it had reason to know was inaccurate.

81.     As a result of HireRight's conduct and inactions, CJA suffered damages as set forth at paragraph 71 supra.

82.      HireRight's conduct and actions were willful, rendering HireRight liable for actual damages, and punitive damages in an amount to be determined by this Court pursuant to N.Y. Gen. Bus. Law § 380-l.

83.     Alternatively, HireRight's conduct and actions were negligent, rendering

HireRight liable for actual damages pursuant to New York Gen. Bus. Law § 380-m.

84.     CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either N.Y. Gen. Bus. Law §§ 380-l or 380-m.

85.     This Court has the equitable power to enjoin HireRight from engaging in conduct that violates the New York State Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

## COUNT III – Violation of New York State Fair Credit Reporting Act
## (against HireRight)

86.     CJA repeats, reiterates and realleges each paragraph designated 1-85 as if fully set forth herein and at length.

87.     HireRight violated the New York State Fair Credit Reporting Act, New York Gen Bus. Law § 380-k by failing to maintain reasonable procedures designed to avoid violations of N.Y. Gen. Bus. Law § 380-j.

88.     As a result of HireRight's conduct and inactions, CJA suffered damages as set forth at paragraph 71 supra.

89.     HireRight's conduct and actions were willful, rendering HireRight liable for actual damages, and punitive damages in an amount to be determined by this Court pursuant to N.Y. Gen. Bus. Law § 380-l.

90.     Alternatively, HireRight's conduct and actions were negligent, rendering HireRight liable for actual damages pursuant to N.Y. Gen. Bus. Law § 380-m.

91.     CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either N.Y. Gen. Bus. Law §§ 380-l or 380-m.

92.     This Court has the equitable power to enjoin HireRight from engaging in conduct

that violates the New York State Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

## COUNT IV – Violation of New York State Fair Credit Reporting Act

### (against HireRight)

93.     CJA repeats, reiterates and realleges each paragraph designated 1-92 as if set forth herein and at length.

94.     HireRight violated the New York State Fair Credit Reporting Act, N.Y. General Business Law §§ 380-g (a) and (b), by failing to notify CJA of the fact that public record information was being reported to Ramius and to provide him with the name and address of the person to whom the public record information was to be reported, or, in the alternative, to maintain reasonable procedures designed to insure that the public record information to be reported was complete and up to date to the extent possible.

95.     As a result of defendant HireRight's conduct, actions and inactions, CJA suffered damages as set forth at paragraph 71 supra.

96.      HireRight's conduct and actions were willful, rendering HireRight liable for actual damages, and punitive damages in an amount to be determined by this Court pursuant to N.Y. Gen. Bus. Law § 380-l.

97.     Alternatively, HireRight's conduct and actions were negligent, rendering HireRight liable for actual damages pursuant to N.Y. Gen. Bus. Law § 380-m.

98.      CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either N.Y. Gen. Bus. Law § 380-l or § 380-m.

99.     This Court has the equitable power to enjoin HireRight from engaging in conduct

that violates the New York State Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

## COUNT V – Violation of Federal Fair Credit Reporting Act

### (against HireRight)

100. CJA repeats, reiterates and realleges each paragraph designated 1-99 as if fully set forth herein and at length.

101. By reporting CJA's non-criminal conviction information in the consumer report it furnished to Ramius, HireRight failed to follow reasonable procedures to assure maximum possible accuracy of the information in the consumer report, in violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681e.

102. As a result of HireRight's conduct and inactions, CJA suffered damages as set forth at paragraph 71 supra.

103. HireRight's conduct and actions were willful, rendering HireRight liable for actual and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n.

104. Alternatively, HireRight's conduct and actions were negligent, rendering HireRight liable for actual damages pursuant to 15 U.S.C. § 1681o.

105. CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

106. This Court has the equitable power to enjoin HireRight from engaging in conduct that violates the Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

## COUNT VI – Violation of Federal Fair Credit Reporting Act

**(against HireRight)**

107.   CJA repeats, reiterates and realleges each paragraph designated 1-106 as if fully set forth herein and at length.

108.   HireRight violated the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681k (a)(1) and 1681k (a) (2), by failing to provide CJA with notice that it was reporting public record information that was likely to have an adverse effect upon his ability to obtain employment, and the address of the person to receive the report or, in the alternative, to use strict procedures to ensure that the public record information it reported was complete and up to date.

109.   As a result of HireRight's conduct, actions and inactions, CJA suffered damages as set forth at paragraph 71 supra.

110.   HireRight's conduct, actions and inactions were willful, rendering HireRight liable for actual and punitive damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n.

111.   Alternatively, HireRight's conduct, actions and inactions were negligent, rendering HireRight liable for actual damages pursuant to 15 U.S.C. § 1681o.

112.   CJA is entitled to recover costs and attorneys' fees from HireRight in an amount to be determined by this Court pursuant to either 15 U.S.C. §§ 1681n or 1681o.

113.    This Court has the equitable power to enjoin HireRight from engaging in conduct that violates the Fair Credit Reporting Act, and CJA requests that this Court exercise this equitable jurisdiction.

**COUNT VII – Violation of New York State Consumer Protection Act**

**(against HireRight)**

114.    CJA repeats, reiterates and realleges each paragraph designated 1-113 as if fully set forth herein and at length.

115.    HireRight violated the New York State Consumer Protection Act, N.Y. Gen. Bus. Law § 349(a), through the false, deceptive and/or illegal business practices it used in collecting and reporting non-criminal record information in the context of the consumer report it furnished to Ramius.

116.    As a result of HireRight's conduct and actions, CJA suffered damages as set forth at paragraph 71 supra, and is entitled to actual damages and injunctive relief, and costs and attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 349(h).

117.    HireRight's conduct and actions were willful or knowing, rendering HireRight liable for treble damages, up to $1,000 per violation, pursuant to N.Y. Gen. Bus. Law § 349(h).

## RELIEF REQUESTED

Wherefore plaintiff Colin J. Addy respectfully requests that this Court grant him the following relief:

A.    Award actual damages of $250,000 as authorized by the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681n and 1681o, the New York State Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380-l and 380-m, the New York State Consumer Protection Act, N.Y. Gen. Bus. Law § 349(h), and the New York State Human Rights Law, N.Y. Exec. Law § 297 *et seq.*,

B.    Award punitive damages of $500,000 as authorized by the federal Fair Credit Reporting Act, 15 U.S.C. § 1681n, the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-l, and the New York Human Rights Law,

N.Y. Exec. Law § 297 *et seq.*,

C.  Award statutory damages of $1,000 per willful violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349(h),

D.  Permanently enjoin the defendants from violating the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-a *et seq.*, the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349(a), and the New York Human Rights Law, N.Y. Exec. Law § 297 *et seq.* pursuant to this Court's equitable powers as well as those specific grants of authority contained in the above statutes,

E.  Award attorneys' fees, interest, costs and disbursements, and that it

F.  Grant such other and further relief as is deemed just and proper.

**JURY TRIAL DEMANDED**

Plaintiff Colin J. Addy demands a trial by jury.

Dated: New York, New York
November 30, 2006

RICHARD WEISS, ESQ. (4978)
Attorney for Plaintiff Colin J. Addy
415 Huguenot Street
New Rochelle, NY 10601
(914)235-0833